**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| NEXT LEVEL ATHLETE LLC | § | |
| | § | |
| VS. | § | ACTION NO. 4:19-CV-00246-Y |
| | § | |
| DAN THOMPSON | § | |

---

**PLAINTIFF'S FILING OF CORRECTED EXHIBIT 1 [DKT.7]**

---

TO THE JUDGE OF THE COURT:

Plaintiff re-files, herewith, Exhibit 1 to Motion to Compel Arbitration and Abatement [DKT 5][DKT 7] for the reason that the OCR conversion on the original filing became skewed in many places throughout the document, causing it to be illegible.

Respectfully submitted,

BARLOW GARSEK & SIMON, LLP
920 Foch Street
Fort Worth, Texas  76107
817.731.4500
817.731.6200 – Facsimile

By: */s/ Christian Dennie*_____
    **Christian Dennie**
    State Bar No. 24045775
    cdennie@bgsfirm.com

**ATTORNEY FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 24, 2019, I electronically filed the foregoing *Corrected Exhibit 1 [DKT 7]* with the Clerk of the Court for the United States District Court, Northern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record by electronic means.

 */s/ Christian Dennie*
Christian Dennie

# EXHIBIT 1

## <u>DECLARATION OF JUSTIN SIMONS</u>

I, Justin Simons, declare as follows:

      1.      My name is Justin Simons.  I am a principal and member of Next Level Athlete,

LLC (hereinafter "**<u>NLA</u>**" or "**<u>Plaintiff</u>**").  All of the statements contained within this Declaration

are based on my own personal knowledge and experience and are true and correct.  I am over

twenty-one (21) years of age and I am fully competent to give this Affidavit testimony.

      2.      In or about early 2016, Plaintiff was introduced to Dan Thompson ("**<u>Defendant</u>**").

On February 5, 2016, Defendant executed the Independent Contractor Agreement

("**<u>Agreement</u>**").  A true and correct copy of the Agreement is attached hereto as *Exhibit A* and is

incorporated herein by referenced as if set forth herein verbatim.  The initial term of the

Agreement was for a period of one (1) year with the ability to renew the Agreement for multiple

renewal terms.  The Agreement was in place and controlling through the date of termination of

the Agreement on October 1, 2018.

      4.      Section 6.06 of the Agreement contains an arbitration provision.  Section 6.06 of

the Agreement states as follows:

> PRIOR TO FILING ANY LEGAL ACTION, COMPLAINT, CLAIM, OR
> ASSERTION OF LIABILITY OR DAMAGES, THE PARTIES AGREE TO
> SUBMIT ANY DISPUTE TO NON-BINDING MEDIATION IN TARRANT
> COUNTY, TEXAS.  THE PARTIES WILL SUBMIT SUCH DISPUTE TO A
> MUTUALLY AGREEABLE MEDIATOR TO BE HELD NOT MORE THAN
> THIRTY (30) DAYS AFTER SUCH REQUEST IS MADE AND THE COSTS
> OF MEDIATION WILL BE BORNE EQUALLY UPON EACH PARTY FOR
> THE FEES ASSOCIATED THEREWITH.  IF THE DISPUTE IS UNABLE TO
> BE RESOLVED AT MEDIATION, THE COMPLAINING PARTY MAY FILE
> FOR ARBITRATION RELATING TO ANY CONTROVERSY OR CLAIM
> ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR BREACH
> THEREOF, AND SUCH DISPUTE SHALL BE SETTLED BY ARBITRATION
> ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION
> ("AAA") FOR SPORTS CASES UNDER ITS COMMERCIAL ARBITRATION

**DECLARATION OF JUSTIN SIMONS**      **Page 1**

RULES AND EXPEDITED RULES, IF APPLICABLE, AND JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN A COURT OF COMPETENT JURISDICTION IN TARRANT COUNTY, TEXAS. SUCH ARBITRATION SHALL BE CONDUCTED IN FORT WORTH, TARRANT COUNTY, TEXAS. THE PARTIES KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHT TO REQUEST AND HAVE A JURY TRIAL.

5.      This matter was initially filed in the state court in Tarrant County, Texas, but was only filed in the state court due to the immediate need to obtain a restraining order in light of Defendant's repeated and unwarranted access to and download of information on NLA's online systems and portals well after the termination of the Agreement.  In fact, Defendant logged into NLA's online systems and portals using the log-in information of one of Plaintiff's client's. Defendant ultimately downloaded a substantial amount of NLA confidential, proprietary, and trade secret information.   It was always NLA's intention to quickly obtain the necessary injunctive relief to require Defendant to cease access NLA's proprietary, confidential, and trade secret information and, then, move the litigation to arbitration.

6.      I am the custodian of the records of NLA. Attached to this affidavit is *Exhibit A*, which is record of NLA. These pages of records are kept by NLA in the regular course of business, and it was the regular course of business of NLA for an employee or representative of NLA, with knowledge of the act or event recorded, to make the record or to transmit information thereof to be included in the record. The record was made at or near the time or reasonably soon thereafter. The records attached to this affidavit are the original or exact duplicates of the original.

(Signature Page to Follow)

**DECLARATION OF JUSTIN SIMONS**                                                                 **Page 2**

My name is Justin Simons, my date of birth is 4.27.79, and my address is 7 Rockingham Court, Heath, Texas 75032.  I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct.

Executed in the Rockwall County, State of Texas, on the 12ᵗʰ day of April, 2019.

By: _____

Justin Simons, Declarant

**DECLARATION OF JUSTIN SIMONS**                                    **Page 3**

# EXHIBIT A

## INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement") by and between Dan Thompson ("Contractor") and Next Level Athlete, LLC ("NLA" or "Company") shall take effect on _____ February 5, 2016 ("Effective Date"). Contractor and NLA are sometimes referred to herein individually as a "Party" and, collectively, as the "Parties."

### WITNESSETH:

**WHEREAS,** Contractor is an individual with knowledge of high school football recruiting and the skills to sell NLA's recruiting services and products;

**WHEREAS,** Company currently operates and provides recruiting services for college football recruiting by and through its Official Web Site, written reports, and hosts events featuring high school football athletes. At such events and as provided by football athletes, video and data is compiled and recorded on Company's Official Web Site. Such information is sold to colleges, universities, and others whereby such colleges, universities, and others have access to Company's Official Web Site through a protected portal and through written reports;

**WHEREAS,** Company desires to engage Contractor to provide the Services (as defined below) in accordance with the terms hereof; and

**WHEREAS,** Contractor desires to serve as a Contractor and provide the Services (as defined below) in accordance with the terms hereof.

**NOW, THEREFORE,** in consideration of the foregoing and the representations, warranties, covenants and agreements herein contained, the parties hereto agree as follows:

### ARTICLE I: SCOPE OF SERVICES AND DUTIES

**1.01** **Services.** Contractor shall perform all duties assigned by NLA including, but not limited to, (a) selling the NLA Scouting System (as defined below) (b) conducting sales meetings with potential clients and reporting the same to NLA; (c) advising NLA on ways to improve operations and sales tactics and initiatives; (d) attending NLA events and activities; (e) executing sales of the NLA Scouting System (as defined below); (f) marketing NLA's business product including, but not limited to, the NLA Scouting System (as defined below); (g) meeting and communicating with college coaches to inform them of NLA's business and the NLA Scouting System (as defined below); (h) submitting invoices and agreements to potential and current clients and reporting and providing the same to NLA; (i) introducing NLA to colleges and universities and their respective football coaching staffs and recruiters; and (j) other duties and services assigned by NLA (collectively "Services"). At the conclusion of the Initial Term (as defined below) and any Renewal Term (as defined below), if any, Contractor shall turn over to Company any and all information, data, materials, spreadsheets, contact information, and any other information or materials created in accordance with the Services, in furtherance of Company's business and/or its business objectives, in accordance with this Agreement, and/or relating to the business of football recruiting and scouting.

**1.02** **Independent Contractor.** Contractor's relationship with NLA is that of an independent contractor, and nothing in this Agreement is intended to, or should be construed to create a partnership, agency, joint venture, subsidiary, or employment relationship. Neither Contractor nor any of his personnel are entitled to any of the benefits that NLA may make available to its employees, including, but not limited to, group health or life insurance, profit-sharing, or retirement benefits. Contractor is not authorized to make any representation, contract, or commitment on behalf of NLA, unless specifically requested or authorized in writing to do so by NLA or as otherwise permitted in this Agreement.

**1.03** **Professional Conduct.** Contractor agrees to perform his obligations hereunder in a professional manner. Contractor further agrees to perform his obligations hereunder in a manner materially consistent with all federal, state, and local laws. Contractor's conduct shall at all times conform to the highest standards and conform with standards of exemplary moral conduct ("Conduct Standards"). Contractor shall not partake in any activity or act that, in the NLA's sole and absolute discretion, may reasonably, in any way, injure or adversely reflect on the name, goodwill or reputation

**INDEPENDENT CONTRACTOR AGREEMENT**

1 | P A G E

EXHIBIT PAGE 5

of NLA, its affiliated companies, or its products, logos, or trademarks ("Negative Acts"). If Contractor either (a) fails to comply with any of the Conduct Standards, or (b) commits any of the Negative Acts, NLA, at its option, may terminate the consulting relationship as set forth in this Agreement.

**1.04    Place of Performance.** The duties to be performed by Contractor hereunder, including, without limitation, Contractor's provision of the Services shall be performed at such locations as NLA may reasonably determine to be necessary or desirable for Contractor to perform the Services.

**1.05    Time Requirements.** Contractor shall devote such time and professional skills to perform the Services as is necessary to efficiently, accurately, professionally and timely perform the Services as is necessary to competently and timely satisfy his obligations to the NLA.

**1.06    Work Product.** Contractor agrees to transfer and assign, and hereby transfers and assigns, to NLA and its designees, without further compensation, the entire right, title and interest throughout the world in and to: (a) all information derived from the Services provided by or at the direction of Contractor in the performance of this Agreement; (b) all intellectual property resulting from Contractor's activities under this Agreement; (c) all intellectual property derived from Services produced by or at the direction of Contractor under this Agreement; and (d) creations and inventions that are otherwise made through the use of NLA's or its affiliates' equipment, supplies, facilities, materials and/or private, secret, confidential, or proprietary information. All such information, data, and analysis derived from the Services are protectable by copyright and will be considered work(s) made by Contractor for hire for NLA (as works made for hire is defined in the United States Copyright Act, 17 U.S.C. § 101) and will belong exclusively to NLA. If by operation of law any of such information, data, and analysis derived from the Services provided is not owned in its entirety by NLA automatically upon creation, Contractor agrees to transfer and assign, and hereby transfers and assigns the same as stated in the first sentence of this Section.

**1.07    Business Expenses.** Contractor is solely responsible for all of its own costs and expenses associated with the performance of the Services under this Agreement, unless expressly authorized by Company in writing.

### ARTICLE II: COMPENSATION

**2.01    Compensation.** The compensation to be paid to Contractor shall be the sum of $100,000.00 to be paid in twelve (12) equal monthly payments ("Compensation") payable on the fifteenth (15th) day of each month.

**2.02    Bonuses.** During the Initial Term (as defined below) and any Renewal Term (as defined below), if any, the Company will pay the Contractor a commission equal to ten percent (10%) of Revenues (as defined below) received from Contractor's sale of the NLA Scouting System generated, derived, negotiated, and completed by and through a signed agreement ("Bonuses"). The Bonuses will be paid in the month following the sale along with Compensation received as set forth in Section 2.01. For the purposes of this Section, "Revenues" shall mean gross receipts of the Company generated by Contractor for the sale of the NLA Scouting System generated, derived, negotiated, and completed by and through a signed agreement minus any of Company's expenses related thereto. For the purposes of this Agreement, "NLA Scouting System" includes, but is not limited to, the online scouting system available at available at http://www.nextlevelathlete.com and the NLA Athlete Evaluation Report or other services, items, and/or reports created by NLA in the past, now, or in the future.

**2.03    Reimbursement.** During the Initial Term (as defined below) and Renewal Term (as defined below), if any, NLA will provide Contractor with up to $_____ per month as a reimbursement for a healthcare plan. Upon termination, Contractor is not entitled to further reimbursement.

### ARTICLE III: REPRESENTATIONS AND WARRANTIES

**3.01    Authorization.** The execution, delivery and performance by Contractor of this Agreement, the consummation by Contractor of the transactions contemplated hereby and thereby, and the performance by Contractor of his obligations hereunder and thereunder are within his powers and have been duly authorized by all necessary individuals, parties, and entities, and no other proceedings are necessary to authorize such execution, delivery and

**INDEPENDENT CONTRACTOR AGREEMENT**
2 | P A G E

performance. This Agreement has been duly executed and delivered by Contractor and such agreement constitutes a legal, valid and binding obligation of Contractor, enforceable against Contractor in accordance with its terms, subject to the effect of any applicable bankruptcy, moratorium, insolvency, reorganization or other similar law affecting the enforceability of creditors' rights generally and to the effect of general principles of equity which may limit the availability of remedies (whether in a proceeding at law or in equity).

3.02    **Non-Contravention.** The execution, delivery and performance by Contractor of this Agreement does not and will not conflict with, result in a breach of, constitute a default under or give rise to any right of termination, cancellation or acceleration of any right or obligation of Contractor or to a loss of any benefit to which Contractor is entitled under any provision of any agreement and/or contract or other instrument or relating to the Services set forth herein and otherwise contemplated by this Agreement.

3.03    **Litigation.** (a) There is no claim, action, suit, investigation, arbitration, proceeding or inquiry pending by, against or affecting, or to the knowledge of Contractor, threatened by, against or affecting, Contractor; (b) Contractor is not subject to any judgment, arbitration award, order or decree with respect to any of the foregoing matters; (c) there are no judgments, orders, injunctions, decrees, stipulations or awards (whether rendered by a court, administrative agency or other governmental authority, by arbitration or otherwise) against Contractor; (d) Contractor is fully authorized to provide the Services and nothing prohibits Contractor from providing the Services; and (e) Contractor has not and will not be enjoined, prohibited, or excluded from providing the Services.

3.04    **Compliance with Laws.** Contractor is not in violation in any material respect of, and to Contractor's knowledge is not under investigation with respect to, and has not been threatened to be charged with or given notice of any violation of, any applicable law, applicable to or the operation and provision of the Services.

## ARTICLE IV: COVENANTS

4.01    **Cooperation.** Contractor covenants, warrants, represents, acknowledges, and agrees both before and for a period of three (3) years beyond the termination of this Agreement to cooperate with NLA including giving written notice as requested by NLA and referring all telephone inquiries regarding, relating to or in connection with the recruiting business to NLA, to enable NLA to continue to do business with each customer, contractor and distributor of Contractor on substantially the same terms and conditions subsequent to the Effective Date.

4.02    **Use of Information, Data, and Analysis.** Contractor covenants, warrants, represents, acknowledges, and agrees that NLA is immediately authorized to use, publish, sell, market, and make available information, data, and analysis derived from the Services. Contractor further covenants, warrants, represents, acknowledges, and agrees that he does not need and is not required to receive consent from any third-party for NLA to use, publish, sell, market, and make available information, data, and analysis derived from the Services.

4.03    **Further Assurances.** Subject to the terms and conditions of this Agreement, each of the Parties will use commercially reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or desirable under applicable laws and regulations to consummate the transactions contemplated by this Agreement. NLA and Contractor, each agree to execute and deliver, and to cause each applicable affiliates, if any, to execute and deliver, such other documents, certificates, agreements and other writings and to take such other actions as may be necessary or desirable in order to consummate or implement expeditiously the transactions contemplated by this Agreement. The Parties agree to execute any necessary documents to effectuate this transaction even after the Effective Date.

4.04    **Public Announcements.** The Parties agree NLA may issue press releases or public statements with respect to this Agreement or the transactions contemplated hereby. Contractor shall cooperate with NLA in the release of press releases and public statements and shall provide a quote or statement, if requested, and take part in any media or interviews necessary to promote NLA.

4.05    **Confidentiality.** Contractor covenants, warrants, represents, acknowledges, and agrees that he has acquired and will be provided certain information by NLA including trade secrets, technology and methods of

**INDEPENDENT CONTRACTOR AGREEMENT**
3 | P A G E

development, proprietary business information such as financial condition, bidding practices, costs, methods of distribution, customer and potential customer lists, and business policies and practices, intellectual property, recruiting analysis, player rankings, conducting events and competitions, video and recordings of players, staged video and recordings of players, and other confidential information ("Confidential Information"). Contractor covenants, warrants, represents, acknowledges, and agrees to keep NLA's Confidential Information confidential and agrees that he will only use such information in connection with the transactions contemplated by this Agreement and not disclose any of such information other than (i) to its employees, advisers and representatives who are involved with the transactions contemplated by this Agreement and who agree to be bound by the confidentiality provisions of this Section, (ii) to the extent such information is or becomes known to the public generally through no fault of Contractor, (iii) to the extent such information now is or hereafter is disclosed to Contractor by any corporation, partnership, association, limited liability company, joint venture, association, trust or other entity or organization that is not bound by a duty of confidentiality, other than the other Party, and (iv) to the extent disclosure is advisable or required by law, regulation, judicial order or request by any governmental authority, provided, that prior to disclosing any information pursuant to this clause (iv), whomever is required to make such disclosure, shall give prior written notice thereof NLA and NLA with the opportunity to contest such disclosure. Contractor recognizes and acknowledges that it had in the past, currently has, and in the future may have, access to Confidential Information of NLA that is valuable, special and unique assets of NLA. Because of the difficulty of measuring economic loss as a result of a breach of the foregoing covenants in this Section, and because of the immediate and irreparable damage that would be caused for which there may be no other adequate remedy, the Parties agree that, in the event of a breach by any of them of the foregoing covenants, in addition to any other damages that may be available, the covenant may be enforced against them by injunction or restraining order. The obligations of Contractor under this Section shall survive the termination of this Agreement.

### 4.06    Covenant Not to Compete and Non-Interference.

(a)    The following terms when used in this Article shall have the following meanings:

(i)    "Competitive Business" means recruiting services for college football recruiting including, but not limited to, scouting, player analysis, recruiting events and competitions, videos and recordings of players, staged videos and recordings of players, and player rankings that are compiled and sold to colleges and universities throughout the United States in the form of the NLA Scouting System.

(ii)    "Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities, by contract or otherwise, and the term "controlled by" has a meaning correlative thereto.

(iii)    "Restricted Territory" means the United States.

(b)    Contractor covenants, warrants, represents, acknowledges, and agrees that he has been provided Confidential Information, Company's intellectual property, and special training and information regarding Company's business practice. During and for a period of three (3) years after the conclusion of the Initial Term and any Renewal Term, if any, Contractor (and any entity or individual for which is affiliated, related, or associated with) shall not engage in a Competitive Business in the Restricted Territory either directly, or indirectly whether as a manager, partner, member, shareholder, lender principal, consultant, agent or otherwise. After the conclusion of the Initial Term and Renewal Terms, if any, Contractor may, however, draft and sale written recruiting reports created by Contractor to be sold to colleges and universities, but Contractor shall under no circumstance offer videos and recordings of players and/or staged videos and recordings of players.

(c)    Contractor covenants, warrants, represents, acknowledges, and agrees that neither he nor any affiliated, related, or associated entity or individual will, for a period of three (3) years during or after the conclusion of the Initial Term and any Renewal Term, if any, directly or indirectly, for whatever reason, whether for his own account or for the account of any other individual, corporation, partnership, association, limited liability company, joint venture, association, trust or other entity or organization: (i) solicit or otherwise interfere with any of the recruiting activities or events hosted by Company or Company's existing or potential contracts or relationships with any affiliate, employee, officer, director employed by or associated with the business or with Company during or after the conclusion of the Initial Term and any

### INDEPENDENT CONTRACTOR AGREEMENT
4 | P A G E

Renewal Term, if any; (ii) interfere with the continuance of supplies, data, analysis, and/or information to Company, from any individual or entity who have been supplying recruiting information, services, data, and analysis for use in the business at any time in the past five years; (iii) interfere with any of the existing or potential contracts or relationships with any independent contractor, customer, consultant or supplier of the business, or any person who is a bona fide or prospective independent contractor, customer, or consultant thereof during or after the conclusion of the Initial Term and any Renewal Term, if any; or (iv) interfere with any contract between the Company and any other party whatsoever existing or proposed during or after the conclusion of the Initial Term and any Renewal Term, if any.

(d)     For a period of three (3) years after the after the conclusion of the Initial Term and any Renewal Term, if any, Contractor covenants, warrants, represents, acknowledges, and agrees that he shall not directly or indirectly induce or attempt to induce any employee or contractor of Company or its affiliates to leave the employ of Company or such affiliates, or in any way interfere with the relationship between Company or such affiliates and any employee or contractor thereof.

(e)     Contractor covenants, warrants, represents, acknowledges, and agrees that in view of the nature of the business and the business objectives of Company, the foregoing territorial and time limitations are reasonable and properly required for the adequate protection of Company and that in the event that any such territorial or time limitation is deemed to be unreasonable and is then reduced by a court of competent jurisdiction, then, as reduced, the territorial and/or time limitation shall be enforced.

(f)     Contractor further covenants, warrants, represents, acknowledges, and agrees that the foregoing territorial and time restrictions are essential to protect the goodwill and going concern value of the business conducted by Company. Contractor acknowledges the remedy at law for any breach by Contractor of the agreements contained in this Article will be inadequate and Company will be entitled to seek injunctive relief without being required to prove actual damages or post bond. The Parties acknowledge this Article constitutes an independent and severable covenant and if any or all of the provisions of this Article are held to be unenforceable for any reason whatsoever, it will not in any way invalidate or affect the remainder of this Agreement, which will remain in full force and effect.

4.07     **Covenant Not to Solicit.**  Contractor covenants, warrants, represents, acknowledges, and agrees that during the Initial Term and any Renewal Term, if any, of this Agreement, and extending for three (3) years after the conclusion of the Initial Term and any Renewal Term, if any, Contractor will not, either directly or indirectly (including, without limitation, by under, through or in connection with any entity associated or affiliated with Contractor), actually or attempt to solicit, induce, recruit or otherwise encourage any of Company's employees or contractors to terminate their relationship with Company, or otherwise take away, in whole or in part, such employees or contractors, either for Contractor or for any other person or entity including, without limitation, by employing or otherwise engaging such employees or contractors.

4.08     **Non-Circumvention.**  Contractor covenants, warrants, represents, acknowledges, and agrees that no private, secret, confidential, or proprietary information or contacts of either Party may be used, directly or indirectly, to circumvent the business efforts of NLA; to transact business directly with customers originated by the NLA; to recruit, hire, or engage any of the NLA's employees, agents, or contractors; or to use such private, secret, confidential, or proprietary information in any manner or for any purpose that is detrimental and adverse or damaging to the interests of NLA (which includes use in a manner that benefits the NLA's competitors). For avoidance of doubt, nothing in this Agreement prohibits the NLA from disclosing certain private, secret, confidential, or proprietary information to its own employees or contractors or to prospective employees or contractors or to customers or prospective customers as reasonably necessary to the advance NLA's business.

4.09     **Nondisparagement.**  Contractor covenants, warrants, represents, acknowledges, and agrees that it will not at any time make, publish, or communicate (or allow persons associated or affiliated with such party to make, publish, or communicate) to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning the other party, its businesses, any of its employees, officers, or existing, former, and prospective customers, suppliers, investors, and other associated third-parties. This does not, in any way, restrict or impede any Party or its affiliates and associates from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or

**INDEPENDENT CONTRACTOR AGREEMENT**
5 | P A G E

an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order. Contractor must promptly provide written notice of any such order to the other Party.

**4.10    Injunction.** Contractor agrees and acknowledges that any breach, or threatened breach, by Contractor of its covenants, representations, and warranties in this Article and in Article III hereof (each a "Breach") would result in irreparable injury and permanent damage to NLA, that the ascertainment of damages related thereto would be difficult and that money damages alone would be an inadequate remedy for the injuries and damages which could be suffered by NLA. In the event of a Breach, NLA shall be entitled, in addition to any and all other rights and remedies which may be available to it at law or in equity, to an injunction from a court of competent jurisdiction, and Contractor hereby agrees that NLA only be required to post a *de minimus* bond or other security in connection therewith should a court require that the same be posted by NLA. In that regard, Contractor hereby waives, and covenants to waive and not to assert, any defense to the effect that NLA has an adequate remedy at law with respect to any such Breach. Contractor represents and warrants that Contractor believes the territory and time restrictions imposed herein are not unreasonable but are, in fact, reasonable under the circumstances based upon the type of business of NLA and the territory in which the business of NLA extends. However, Contractor agrees that if, for any reason whatsoever, the territorial or time restrictions contained herein, or any of the terms hereof, are found by a court of competent jurisdiction or arbitration panel to be unreasonable, all of the provisions hereof shall nevertheless remain enforceable over the area and for the length of time in accordance with the terms that such court or panel shall determine to be reasonable.

## ARTICLE V: TERM AND TERMINATION

**5.01    Term.** Unless earlier terminated in accordance with this Agreement, Contractor agrees and shall serve as a contractor for Company for a period of one (1) year beginning on February 5, 2016 and concluding on February 4, 2017 ("Initial Term"). Thereafter the term may be extended, at the sole discretion and option of Company, for an additional one (1) year period upon Company providing written notice to Contractor ("Renewal Term(s)"). Company may exercise the renewal of this Agreement on as many occasions as it deems appropriate and, thus, there may be multiple Renewal Terms.

**5.02    Termination.** This consulting relationship may be terminated for any one or more of the following reasons:

(a)    NLA may terminate this consulting relationship as set forth under this Article at any time by giving Contractor thirty (30) days written notice.

(b)    NLA may elect to terminate this Agreement immediately for Cause (as defined below) by giving written notice to Contractor. "Cause" means: (i) Contractor's material breach of his obligations under this Agreement and failure to cure such breach within ten (10) days after written notice of the breach is given to Contractor; (ii) an act of fraud, embezzlement, misappropriation, or gross dishonesty; (iii) gross negligence or recklessness in performing under this Agreement; (iv) violations or breaches of Section 1.03; (v) Contractor creates, operates, takes part in, advises, or otherwise is engaged with or provides information to a competitor or future competitor of NLA; (vi) circumvents or attempts to circumvent NLA; (vii) provides confidential information relating to NLA to a third-party; (viii) Contractor cannot or does not substantially perform his duties as a consultant because of illness or medical or psychological incapacity, as declared by a medical physician or psychologist, of any type whatsoever for a cumulative total of more than six (6) months in any year; (ix) if Contractor dies or becomes permanently physically or mentally disabled, as declared by a medical physician or psychologist, during the Term of this Agreement to such an extent that he is unable to substantially satisfactorily perform his duties as a consultant; (x) Contractor fails or refuses to perform any one or more of the Services; (xi) Contractor breaches or violates Section 5.03 and/or provides the Services to a competitor of NLA or any way becomes partner, member, shareholder, venturer, owner, contractor, consultant, employee, or in any way involved in the Competitive Business; and and/or (xii) Contractor is prohibited, enjoined, or is not authorized to perform the Services or, otherwise, not permitted to perform on behalf of NLA. If this Agreement is terminated for cause, Contractor is not entitled to any further Compensation, Bonuses, or reimbursements and, thus, all Compensation, Bonuses, or reimbursements will cease as of the date of termination.

## INDEPENDENT CONTRACTOR AGREEMENT
6 | P A G E

(c)     Company shall be permitted, but is not required, to terminate this Agreement if Contractor fails to generate Revenues generated, derived, negotiated, and completed by and through a signed agreement in the amount of $250,000.00 by September 15, 2016 for the Initial Term and $250,000.00 within six (6) months of any Renewal Term, if any. If this Agreement is terminated in accordance with this provision, Contractor is not entitled to any further Compensation, Bonuses, or reimbursements and, thus, all Compensation, Bonuses, and reimbursements will cease as of the date of termination.

**5.03     Exclusivity During the Term.** During the Initial Term and any Renewal Term, if any, Contractor shall exclusively provide the Services to NLA. Contractor shall not provide the Services to a competitor of NLA or any way become a partner, member, shareholder, venturer, owner, contractor, consultant, employee, or in any way involved in the Competitive Business.

**5.04     Performance Meetings.** During the Initial Term and Renewal Term(s), if any, Contractor shall schedule with NLA performance meetings to occur on a monthly basis, at a minimum, to discuss Contractor's performance, performance objectives, sales data and information, customers and potential customers, areas of improvement for NLA, and areas of improvement for Contractor. At least forty-eight (48) hours prior to the meeting called for under this Section, Contractor shall provide a written agenda to NLA.

### ARTICLE VI: MISCELLANEOUS

**6.01     Representations and Warranties.** Each of the Parties hereby represents and warrants to the other that this Agreement has been duly authorized, executed, and delivered by it and that this Agreement constitutes its legal, valid, and binding obligation, enforceable against it in accordance with its terms.

**6.02     Assignment; Deemed Assignment.** Neither Party may assign this Agreement or any of its obligations hereunder without the prior written consent of the other Party.

**6.03     Notices.** All notices, requests and other communications to either party hereunder shall be in writing (including telex, telecopy or similar writing) and shall be sent by nationally-recognized, next-day delivery service or mailed by certified or registered mail, return receipt requested, postage prepaid, addressed as set forth below; receipt shall be deemed to occur on the date of actual receipt or, if sent by a nationally-recognized, next-day delivery service, on the first business day after deposit with such service. All such communications shall be addressed as follows:

If to Contractor:     Dan Thompson

                      3480 Sycamore Cove
                      Henderson, Ky 42420
If to NLA:            Next Level Athlete, LLC
                      Attn: Justin Simons
                      P.O. Box 232
                      Rockwall, TX 75087

With a copy (which does not constitute notice) to:

Christian Dennie
Barlow Garsek & Simon, LLP
920 Foch Street
Fort Worth, TX 76107

**6.04     No Waiver.** Failure to insist upon strict compliance with any provision of this Agreement does not operate as a waiver of, or estoppel with respect to, any subsequent or other failure, nor does such failure to act constitute or may it be construed or interpreted as a modification or amendment of this Agreement.

### INDEPENDENT CONTRACTOR AGREEMENT
7 | P A G E

**6.05** **Governing Law; Venue; Consent to Jurisdiction.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas in all respects, including matters of construction, interpretation, validity, and enforcement. If any provision of this Agreement is prohibited by law, such prohibition shall not affect the validity of the remaining provisions of this Agreement. Venue for any litigation, dispute, or claim concerning, arising under, pursuant to, in relation to, or arising out of this Agreement shall be in Tarrant County, Texas.

**6.06** **Dispute Resolution.** PRIOR TO FILING ANY LEGAL ACTION, COMPLAINT, CLAIM, OR ASSERTION OF LIABILITY OR DAMAGES, THE PARTIES AGREE TO SUBMIT ANY DISPUTE TO NON-BINDING MEDIATION IN TARRANT COUNTY, TEXAS. THE PARTIES WILL SUBMIT SUCH DISPUTE TO A MUTUALLY AGREEABLE MEDIATOR TO BE HELD NOT MORE THAN THIRTY (30) DAYS AFTER SUCH REQUEST IS MADE AND THE COSTS OF MEDIATION WILL BE BORNE EQUALLY UPON EACH PARTY FOR THE FEES ASSOCIATED THEREWITH. IF THE DISPUTE IS UNABLE TO BE RESOLVED AT MEDIATION, THE COMPLAINING PARTY MAY FILE FOR ARBITRATION RELATING TO ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR BREACH THEREOF, AND SUCH DISPUTE SHALL BE SETTLED BY ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") FOR SPORTS CASES UNDER ITS COMMERCIAL ARBITRATION RULES AND EXPEDITED RULES, IF APPLICABLE, AND JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN A COURT OF COMPETENT JURISDICTION IN TARRANT COUNTY, TEXAS. SUCH ARBITRATION SHALL BE CONDUCTED IN FORT WORTH, TARRANT COUNTY, TEXAS. THE PARTIES KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHT TO REQUEST AND HAVE A JURY TRIAL.

**6.07** **Remedies.** All remedies of the parties hereunder are cumulative, are in addition to any other remedies provided for by law, and may, to the extent permitted by law, be exercised concurrently or separately. The exercise of any one remedy is not deemed to be an election of such remedy or to preclude the exercise of any other remedy. Except as otherwise provided in this Agreement, each party is solely responsible for any and all expenses incurred by that party for any legal action brought by one party against the other and arising out of this Agreement including court cost and attorney's fees.

**6.08** **Severability.** The invalidity or unenforceability of any particular provision of this Agreement will not affect its other provisions, and to that end, the provisions of this Agreement are severable.

**6.09** **Entire Agreement; Amendment.** This Agreement constitutes the entire understanding of the Parties with respect to the subject matter hereof. All prior written and verbal negotiations and agreements, by and between the NLA and the Contractor with respect to the subject matter of this Agreement are superseded by this Agreement, and there are no other representations, warranties, understandings, or agreements with respect to the subject matter of this Agreement. The Recitals set forth above are hereby incorporated by reference and made a material part hereof as fully as though they were herein set forth and rewritten. No change, modification, addition, or termination of this Agreement or any part hereof is valid unless in writing and signed by or on behalf of both parties.

**6.10** **Counterparts; Electronic Delivery.** This Agreement may be executed in any number of counterparts, each of which is deemed an original and all of which together constitute one instrument. A signed copy of this Agreement delivered by facsimile, email, or other means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**6.11** **Contract Interpretation.** All Parties to this Agreement hereby agree and understand that this Agreement was negotiated by both Parties and no ambiguities in this Agreement may be construed against either party should that Party being deemed the drafter of this Agreement.

**6.12** **Benefit; Binding Effect; No Third-Party Beneficiary.** This Agreement is binding upon, inures to the benefit of, and is enforceable by and against, all the parties and their respective heirs, legal representatives, personal representatives, successors, and permitted assigns. Nothing in this Agreement, expressed or implied, is intended to or does confer upon any person other than the parties, and their respective heirs, legal representatives, personal representatives, successors, and permitted assigns, any rights, remedies, obligations, or liabilities.

**INDEPENDENT CONTRACTOR AGREEMENT**
8 | P A G E

**6.13** **Survival.** All provisions of this Agreement that by their nature should survive any expiration or termination of this Agreement will so survive. The right to bring claims or assert causes of action for breach of any covenants, agreements, representations and warranties of the Parties contained in this Agreement or in any certificate or other writing delivered pursuant hereto or in connection herewith shall survive beyond the Effective Date for a period of five (5) years; provided, however, that: (a) the covenants and agreements which by their terms do not contemplate performance after the Effective Date shall terminate at the conclusion of such date; (b) the covenants and agreements which by their terms contemplate performance after the Effective Date shall survive indefinitely; and (c) any claims, actions or suits NLA may have which arise from any fraud, willful misconduct or intentional misrepresentation on the part of Contractor, or any representative, affiliate, associated individual, corporation, partnership, association, limited liability company, joint venture, association, trust or other entity or organization thereof (each a "Fraud Claim") shall continue in full force and effect without limitation. Any covenant, agreement, representation or warranty in respect of which indemnity may be sought as set forth herein shall survive the time at which it would otherwise terminate, if notice with reasonable specificity of the inaccuracy or breach thereof giving rise to such right to indemnity shall have been given to the Party against whom such indemnity may be sought prior to such time.

**6.14** **Indemnification.** CONTRACTOR SHALL INDEMNIFY, REIMBURSE, DEFEND, AND HOLD HARMLESS NLA AND ITS AFFILIATES, ASSOCIATED OR RELATED ENTITIES INCLUDING NEXT LEVEL ATHLETE, LLC AND ITS DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, INDEPENDENT CONTRACTORS, AFFILIATES, PREDECESSORS, SUCCESSORS, LEGAL COUNSEL, INSURANCE COMPANIES, AND ASSIGNS (EACH, AN "INDEMNIFIED PERSON") FROM AND AGAINST ANY AND ALL DAMAGE, LOSS, LIABILITY, CLAIM, DEMAND, JUDGMENT, AWARD, SANCTION, CHARGE, COST, FINE, PENALTY, EXPENSE (INCLUDING EXPENSES OF INVESTIGATION, PREPARATION AND DEFENSE, REASONABLE FEES AND EXPENSES OF ATTORNEYS, EXPERTS, ACCOUNTANTS, APPRAISERS, CONSULTANTS, WITNESSES, INVESTIGATORS AND ANY OTHER AGENT OR REPRESENTATIVE OF SUCH ANY REPRESENTATIVE, AFFILIATE, ASSOCIATED INDIVIDUAL, CORPORATION, PARTNERSHIP, ASSOCIATION, LIMITED LIABILITY COMPANY, JOINT VENTURE, ASSOCIATION, TRUST OR OTHER ENTITY OR ORGANIZATION AND ALL OTHER FEES AND EXPENSES INCURRED BY ANY INDEMNIFIED PERSON IN CONNECTION WITH ANY ACTION, SUIT OR PROCEEDING), AMOUNT PAID IN SETTLEMENT, LIEN OR OTHER OBLIGATION OF ANY NATURE WHATSOEVER (COLLECTIVELY, "LOSS") TO WHICH SUCH INDEMNIFIED PERSON BECOMES SUBJECT AS A RESULT OF, ARISING OUT OF OR BASED ON, DIRECTLY OR INDIRECTLY, ANY OF THE FOLLOWING: (I) ANY INACCURACY IN, OR BREACH OF, ANY REPRESENTATION OR WARRANTY MADE BY CONTRACTOR PURSUANT TO THIS AGREEMENT; (II) ANY BREACH OF A COVENANT OR AGREEMENT MADE OR TO BE PERFORMED BY CONTRACTOR PURSUANT TO THIS AGREEMENT; (III) IN EACH CASE WITHOUT REGARD TO ANY MATERIALITY STANDARD CONTAINED IN THE APPLICABLE REPRESENTATION, WARRANTY OR COVENANT; (IV) ANY CLAIM, CAUSE OF ACTION, EQUITABLE RELIEF, AND/OR DAMAGES RELATING TO CONTRACTOR VIOLATING AN AGREEMENT WITH A THIRD-PARTY AND/OR CONTRACTOR BEING UNABLE, PROHIBITED, ENJOINED, OR UNAUTHORIZED TO PERFORM THE SERVICES; AND/OR (V) ANY CLAIM, CAUSE OF ACTION, DAMAGE, LOSS, LIABILITY, OR ASSERTION OF DAMAGES OR LOSS RELATING TO THE RIGHT TO USE INFORMATION, DATA, AND ANALYSIS RELATING TO FOOTBALL RECRUITING AND THE COMPETITIVE BUSINESS. THE INDEMNIFICATION OBLIGATIONS CONTAINED IN THIS SECTION WILL CONTINUE IN FULL FORCE AND EFFECT NOTWITHSTANDING THE EXPIRATION OR TERMINATION OF THIS AGREEMENT.

**6.15** **Limitation of Damages.** NLA WILL NOT BE LIABLE TO CONTRACTOR FOR ANY EXEMPLARY, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOST REVENUES, LOST PROFITS OR LOST PROSPECTIVE ECONOMIC ADVANTAGE ARISING FROM ANY ACT OR OMISSION IN PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT. CONTRACTOR HEREBY RELEASES AND WAIVES ANY CLAIM TO SUCH DAMAGES THAT MAY BE SET FORTH AGAINST NLA. CONTRACTOR DAMAGES ARE LIMITED TO THE AMOUNTS TO BE PAID TO CONTRACTOR BY NLA UNDER THE TERMS OF THIS AGREEMENT.

**6.16** **Execution.** The Parties agree to execute any and all documents necessary to effectuate the terms of this Agreement including those documents that must be executed after the Effective Date.

**INDEPENDENT CONTRACTOR AGREEMENT**
9 | P A G E

**6.17** **Good Faith.** The Parties to this Agreement and their respective heirs, legal representatives, successors, subsidiaries, parent companies, related entities, and assigns agree to work together in good faith to equitably and timely fulfill the terms of this Agreement.

**6.18** **Headings.** The headings, captions, titles, and numbering system are inserted only as a matter of convenience and may under no circumstances be considered in interpreting the provisions of this Agreement.

**6.19** **Expenses.** Except as otherwise provided herein, all costs, fees, and expenses incurred in connection with this Agreement shall be paid by the Party incurring such cost or expense.

**6.20** **Terms.** All references herein to Articles, Sections, and Exhibits, if any, shall be deemed references to such parts of this Agreement, unless the context shall otherwise require. All references to singular or plural shall include the other as the context may require. Unless otherwise expressly stated, the words "herein," "hereof," and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, Subsection or other subdivision. The words "include" and "including" shall not be construed as terms of limitation.

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

CONTRACTOR:

By: _____

Dan Thompson

Date: __February 5, 2016__

NLA:

By: _____

Justin Simons

President of Next Level Athlete, LLC

Date: __2/5/16__

**INDEPENDENT CONTRACTOR AGREEMENT**
**10 | P A G E**