**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **NEXT LEVEL ATHLETE LLC** | § | |
| | § | |
| **VS.** | § | **ACTION NO. 4:19-CV-00246-Y** |
| | § | |
| **DAN THOMPSON** | § | |

___

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
___

TO THE JUDGE OF THE COURT:

Next Level Athlete, LLC ("**Plaintiff**" or "**NLA**") files this *First Amended Complaint* against Dan Thompson ("**Defendant**" or "**Thompson**" or "**Contractor**") and in support thereof shows the Court as follows:

**I.**

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to 28 U.S.C § 1332(a) as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Specifically, complete diversity of citizenship exists because each member of Plaintiff is a citizen of the State of Texas and Defendant is a citizen of the Commonwealth of Kentucky.

2. Venue is proper in the Northern District of Texas, Fort Worth Division pursuant to 28 U.S.C § 1391(b)(2) and (c) because all or a substantial part of the events or omissions giving rise to the claims asserted in this suit occurred in Tarrant County, Texas, the property made the basis of this dispute is in Tarrant County, Texas, and the contract made the basis of this dispute was entered into in Tarrant County, Texas. Subject to the *Motion to Compel Arbitration and Abatement* [Dkt. 5], the Independent Contractor Agreement ("**Agreement**") executed by Plaintiff

and Defendant sets venue for any dispute as a court of competent jurisdiction in Tarrant County, Texas.

## II.

## PARTIES

3. Plaintiff is a Texas limited liability company with principal place of business at 7 Rockingham Ct., Heath, Texas 75032. Plaintiff has appeared in this litigation.

4. Defendant is an individual residing in the Commonwealth of Kentucky with his residence located at 3480 Sycamore Cove, Henderson, Kentucky 42420. Defendant has appeared in this litigation.

## III.

## FACTS

5. In 2005, Plaintiff was founded and created to give high school football athletes a platform to be recruited by colleges and universities offering intercollegiate football scholarships. Today, Plaintiff has grown substantially and is widely considered one of the top NCAA certified recruiting/scouting platforms used by college football coaches to evaluate talented high school football athletes in the State of Texas. Plaintiff currently operates and provides recruiting/scouting services for college football programs by and through its Official Web Site, written reports, and regional events featuring high school football athletes. At such events and as provided by football athletes, video and data is compiled and recorded on Plaintiff's Official Web Site. Such information is sold to colleges, universities, and others whereby such colleges, universities, and others have access to Plaintiff's Official Web Site through a protected portal and through written reports. Since 2005, hundreds of high school football athletes who have attended events hosted by Plaintiff have received full athletic scholarships to attend major Division I colleges and

universities. Additionally, many of these talented athletes have gone on to be first round draft selections in the National Football League Draft.

6. In or about early 2016, Plaintiff was introduced to Defendant. Defendant held himself out as an individual with substantial contacts in college football and recruiting and, further, represented that he could grow Plaintiff's business and advance its products and services. Accordingly, on February 5, 2016, Defendant executed the Agreement and, according to Section 1.01 of the Agreement, he was tasked with performing the following services in exchange for compensation:

> (a) selling the NLA Scouting System (as defined below) (b) conducting sales meetings with potential clients and reporting the same to NLA; (c) advising NLA on ways to improve operations and sales tactics and initiatives; (d) attending NLA events and activities; (e) executing sales of the NLA Scouting System (as defined below); (f) marketing NLA's business product including, but not limited to, the NLA Scouting System (as defined below); (g) meeting and communicating with college coaches to inform them of NLA's business and the NLA Scouting System (as defined below); (h) submitting invoices and agreements to potential and current clients and reporting and providing the same to NLA; (i) introducing NLA to colleges and universities and their respective football coaching staffs and recruiters; and (j) other duties and services assigned by NLA.

The initial term of the Agreement was for a period of one (1) year with the ability to renew the Agreement for multiple renewal terms. The Agreement was in effect as of termination that occurred on or about October 1, 2018.

7. Initially, Defendant showed drive and determination with the goal of growing Plaintiff's business. He was initially able to secure new college and university clients who were accessing Plaintiff's online recruiting platform in exchange for a fee in compliance with NCAA rules and regulations. However, Defendant's focus started to wane and he showed signs that he was derelict in his duties including, but not limited to, failing to invoice clients, failing to communicate with clients, failing to log into Plaintiff's system, failing to direct communications

to clients through company-issued email, and failing to communicate with Plaintiff. As a result, Plaintiff was not paid by various colleges and universities who had access to Plaintiff's online platform and many others failed to renew their subscriptions with Plaintiff. In August of 2018, Plaintiff and a member of Plaintiff's executive team, met with Defendant in an effort to re-focus Defendant on Plaintiff's goals, initiatives, and business and informed him that he had to meet certain goals or Plaintiff would be forced to terminate the relationship.

   8. Unfortunately, Defendant's performance did not improve and only worsened. After Defendant's role in a tumultuous series of meetings with high school football coaches in Texas and a near altercation with a prominent high school football coach, Plaintiff had no choice but to terminate its relationship with Defendant. Accordingly, the President of Plaintiff reached out to Defendant and informed him that his relationship with Plaintiff was being terminated for cause. By and through written correspondence dated October 1, 2018 ("**Termination Letter**"), Plaintiff informed Defendant that he was relieved of his duties for cause for violations of Sections 5.02(b), 5.02(c), 5.03, and 5.04 of the Agreement and, specifically, referenced the following violations:

> Among other things, NLA has come to learn that you have 1) not directed email correspondence to college football coaching staffs for an extended period of time; 2) failed to appropriately submit invoices to college clients; 3) failed to maintain ongoing communication with college clients; 4) failed to consistently report communication with college clients to NLA; 5) underperformed in the areas as defined on section 1.01 items e, f and i; 6) used NLA's system and email account for personal purposes and endeavors; 7) used NLA contractor's, at NLA's expense, to formulate and augment football recruiting data/video for personal endeavors; 8) used NLA's platform and systems for your own personal gain and for purposes that conflict with your agreement with NLA; 9) conducted business under the name DT Football Scouting in conflict with your obligations to NLA; 10) failed to meet performance and sales goals; 11) failed to provide weekly sales logs; 12) failed to keep in regular communication with NLA; 13) failed to have and purchase orders and/or contracts executed by clients; and 14) failed to appropriately maintain transaction records related to college sales.

Additionally, Plaintiff reminded Defendant of his obligations under the terms of the Agreement and the law to protect and not disclose Plaintiff's confidential and proprietary information and his obligations and covenants under the Agreement including, covenant not to compete, covenant of non-interference, covenant not to solicit, covenant of non-circumvention, and covenant of non-disparagement. Further, the Termination Letter informed Defendant he was "to immediately cease all access to NLA's proprietary information and data including, but not limited to, recruiting data, customer lists, bidding practices, website, and any and all additional business data and information" and to "immediately return any and all of NLA's materials and property including, but not limited to, 1) Apple laptop computer; 2) external hard drive; 3) prospect book made in preparation for the 2018 AFCA Convention; 4) all prospect sheets and data; 5) DCTF data; 6) marketing presentations and collateral information; and 7) NCAA application and data. Also, you shall immediately turnover all passwords and credentials for, and possibly others, Adobe, Wufoo, Dropbox, Van Harris Polls, Google accounts, DCTF database, NCAA account, and other online subscriptions."

9.  Defendant did not follow Plaintiff's demands and warnings. He immediately started contacting Plaintiff's college and university clients and disparaging Plaintiff's business, which has been the impetus of non-renewals by Plaintiff's clients. To make matters worse, after his termination, Defendant has continuously accessed Plaintiff's database and downloaded recruiting data for high school football athletes, which includes sensitive data such as phone numbers and addresses. After being terminated by Plaintiff, in October 2018, December 2018, January 2019, and February 2019, Defendant logged into Plaintiff's online database through its host (not the online database offered through Plaintiff's Official Web Site) and has downloaded Plaintiff's proprietary, confidential, and protected data. In a nefarious and devious fashion, in

recent months, Defendant used the user name and password of a member of the coaching staff at Louisiana State University ("**LSU**") to review and download Plaintiff's recruiting data. Plaintiff thought it was odd that a member of the LSU coaching staff was accessing Plaintiff's host site from the IP address associated with Defendant's computer in Henderson, Kentucky where Defendant resides. Plaintiff reached out to the member of the LSU coaching staff who purportedly logged into Plaintiff's host site and it was confirmed that he did not access the host site on the dates at issue.

      10.     Defendant is on a warpath to destroy Plaintiff's business and disparage Plaintiff in the college football recruiting community, all the while stealing and misappropriating Plaintiff's proprietary, confidential, and protected data. Just days after one data download of upcoming recruiting classes, one of Plaintiff's clients informed Plaintiff that its services were no longer needed and it would not renew with Plaintiff. Defendant's deception was standard practice for Defendant. During the term of his relationship with Plaintiff, he violated the exclusivity requirements of Section 5.03 of the Agreement and operated a competing business known as DT Football Scouting (or similar entity) and circumvented Plaintiff in violation of Section 4.08 of the Agreement for his personal gain. In the Agreement, Defendant covenanted, warranted, represented, acknowledged and agreed to keep proprietary, confidential, and protected data confidential (Section 4.05), not to compete or interfere with Plaintiff for a period of three (3) years (Section 4.06), not to solicit, induce, recruit, or otherwise encourage any of Plaintiff's employees or contractors to leave their relationship with Plaintiff for a period of three (3) years (Section 4.07), not to circumvent Plaintiff for business opportunities (Section 4.08), and not to disparage Plaintiff (Section 4.09). As per the terms of the Agreement, specifically Section 6.13, these obligations survive the termination of the Agreement.

11. As a result of Defendant's conducts, acts, and omissions, Plaintiff has been damaged.

## IV.

## CAUSES OF ACTION

12. All conditions precedent for recovery have been met. To the extent necessary, each of the claims set forth below are pleaded in the alternative.

13. **Misappropriation of Trade Secrets.** Plaintiff incorporates paragraphs 5-12 herein by reference as such paragraphs were reproduced verbatim. Plaintiff owns trade secrets; Defendant used or disclosed said trade secrets; and Plaintiff has suffered injuries. Defendant had access to Plaintiff's trade secrets, customer and potential customer lists, pricing models, bidding practices, financial condition, business policies and practices, technology and methods of development, costs, methods of distribution, intellectual property, recruiting analysis, player rankings, conducting events and competitions, video and recordings of athletes, staged video and recordings of athletes, raw data on athletes, contact information for high school coaches, contact information for college coaches, contact information for athletes, and other confidential and proprietary information. Defendant has accessed, used, and downloaded trade secret information to obtain customers that were once Plaintiff's customers. As a result, Plaintiff has lost and could potentially lose customers or a portion of work provided to customers. As a result of Defendant's breaches, failures, acts, and omissions, Plaintiff has been damaged and such damages are within the jurisdiction of this Court.

14. **Theft of Trade Secrets and Business Property.** Plaintiff incorporates paragraphs 5-13 herein by reference as such paragraphs were reproduced verbatim. Plaintiff has a possessory right to certain property; Defendant unlawfully appropriated, secured or stole Plaintiff's business

property and trade secrets in violation of Texas Penal Code §§ 31.03, 31.05; the unlawful taking was made with the intent to deprive Plaintiff of its trade secrets; and Plaintiff sustained damages as a result of the theft. Defendant had access to Plaintiff's trade secrets, customer and potential customer lists, pricing models, bidding practices, financial condition, business policies and practices, technology and methods of development and distribution, costs, intellectual property, recruiting analysis, player rankings, conducting events and competitions, video and recordings of athletes, staged video and recordings of athletes, raw data on athletes, contact information for high school coaches, contact information for college coaches, contact information for athletes, and other confidential and proprietary information. Defendant has accessed, used, and downloaded trade secret information to obtain customers that were once Plaintiff's customers. As a result, Plaintiff has lost or will lose customers or a portion of work provided to customers. Also, Defendant has failed and refused to return Plaintiff's business property including, but not limited to: 1) Apple laptop computer; 2) external hard drive; 3) prospect book made in preparation for the 2018 AFCA Convention; 4) all prospect sheets and data; 5) DCTF data; 6) marketing presentations and collateral information; and 7) NCAA application and data. As a result of Defendant's breaches, failures, acts, and omissions, Plaintiff has been damaged and such damages are within the jurisdiction of this Court.

    15.    **Tortious Interference with a Contract and Existing Contractual Relations.** Plaintiff incorporates paragraphs 5-14 herein by reference as such paragraphs were reproduced verbatim. Plaintiff had a valid contract with the customers; Defendant willfully and intentionally interfered with the contract; Defendant's interference proximately caused Plaintiff's injury; and Plaintiff incurred actual damage or loss. Defendant had access to Plaintiff's trade secrets, customer and potential customer lists, pricing models, bidding practices, financial condition, business

policies and practices, technology and methods of development and distribution, costs, methods, intellectual property, recruiting analysis, player rankings, conducting events and competitions, video and recordings of athletes, staged video and recordings of athletes, raw data on athletes, contact information for high school coaches, contact information for college coaches, contact information for athletes, and other confidential and proprietary information. Defendant has accessed, used, and downloaded trade secret information to obtain customers that were once Plaintiff's customers.  As a result, Plaintiff has lost or will lose customers or a portion of work provided by customers.  Defendant sought to and did use Plaintiff's trade secret information while still employed by Plaintiff and subsequent to leaving Plaintiff.  As a result of Defendant's breaches, failures, acts, and omissions, Plaintiff has been damaged and such damages are within the jurisdiction of this Court.

16.  **Breach of Fiduciary Duty.**  Plaintiff incorporates paragraphs 5-15 herein by reference as if such paragraphs were reproduced verbatim. Plaintiff and Defendant had a fiduciary relationship; Defendant breached his fiduciary relationship to Plaintiff; and Defendant's breach resulted in injury to Plaintiff or benefit to Defendant. As a contractor of Plaintiff, Defendant owed Plaintiff the duty of full disclosure, duty of loyalty, and duty of confidentiality.  Defendant has used and disclosed Plaintiff's trade secrets, customer and potential customer lists, pricing models, bidding practices, financial condition, business policies and practices, technology and methods of development, costs, methods of distribution, intellectual property, recruiting analysis, player rankings, conducting events and competitions, video and recordings of athletes, staged video and recordings of athletes, raw data on athletes, contact information for high school coaches, contact information for college coaches, contact information for athletes, and other confidential and proprietary information. Defendant has accessed, used, and downloaded trade secret information

to obtain customers that were once Plaintiff's customers. As a result, Plaintiff has lost or will lose customers or a portion of work provided by customers. Plaintiff has lost or will lose customers or a portion of work provided by customers. Defendant sought to and did use Plaintiff's trade secret information while still under contract with Plaintiff and subsequent to leaving Plaintiff. Additionally, Defendant breached his obligations and duties to Plaintiff including the exclusivity requirements of Section 5.03 of the Agreement and operated a competing business known as DT Football Scouting (or similar entity). Defendant further violated the Agreement by circumventing Plaintiff in violation of Section 4.08 of the Agreement for his personal gain. As a result of Defendant's breaches, failures, acts, and omissions, Plaintiff has been damaged and such damages are within the jurisdiction of this Court.

17. **Breach of Contract.** Plaintiff incorporates paragraphs 5-16 herein by reference as such paragraphs were reproduced verbatim. Plaintiff and Defendant entered into a written contract known as the Agreement. Defendant breached the Agreement by violating the exclusivity requirements of Section 5.03 of the Agreement and operated a competing business known as DT Football Scouting (or similar entity). Defendant further violated the Agreement by circumventing Plaintiff in violation of Section 4.08 of the Agreement for his personal gain. In the Agreement, Defendant covenanted, warranted, represented, acknowledged and agreed to keep proprietary, confidential, and protected data confidential (Section 4.05), not to compete or interfere with Plaintiff for a period of three (3) years (Section 4.06), not to solicit, induce, recruit, or otherwise encourage any of Plaintiff's employees or contractors to leave their relationship with Plaintiff for a period of three (3) years (Section 4.07), not to circumvent Plaintiff for business opportunities (Section 4.08), and not to disparage Plaintiff (Section 4.09). Defendant has breached each and every one of these terms. As per the terms of the Agreement, specifically Section 6.13, these

obligations survive the termination of the Agreement. Also, Defendant has failed and refused to return Plaintiff's business property including, but not limited to: 1) Apple laptop computer; 2) external hard drive; 3) prospect book made in preparation for the 2018 AFCA Convention; 4) all prospect sheets and data; 5) DCTF data; 6) marketing presentations and collateral information; and 7) NCAA application and data. As a result of Defendant's breaches, failures, acts, and omissions, Plaintiff has been damaged and such damages are within the jurisdiction of this Court.

## V.

## DAMAGES AND ATTORNEY'S FEES

18. **Attorney's Fees.** Plaintiff incorporates paragraphs 5-18 herein by reference as such paragraphs were reproduced verbatim. Plaintiff has been required to retain the services of an attorney to enforce its rights and is entitled to recover reasonable and necessary attorney's fees and costs of court. In accordance with Chapter 134A of the Texas Civil Practice and Remedies Code, Chapter 134 of the Texas Civil Practice and Remedies Code, Chapter 38 of the Texas Civil Practice and Remedies Code, and principles of equity, Plaintiff is entitled to seek and obtain attorney's fees from Defendant. Pursuant to the usual and customary fees for a claim of this type, Plaintiff is entitled to reasonable and necessary attorney's fees for preparation and trial of this case, and additional attorneys' fees in the event of an appeal or other proceedings before the Texas Court of Appeals and the Supreme Court of Texas.

19 **Damages.** Plaintiff seeks the full amount of actual, general, special, and statutory damages incurred by Plaintiff and caused by the acts and omissions of Defendant. Further, Plaintiff seeks statutory damages in accordance with Section 134.005(a)(1) of the Texas Civil Practice and Remedies Code. Also, Plaintiff is entitled to the return of any funds improperly

obtained by use, disclosure, or misappropriation of Plaintiff's trade secrets, proprietary, and confidential information, including profit disgorgement.

20. **Exemplary Damages.** Defendant's conduct was of the type for which the law allows an award of exemplary damages at common law and in accordance with Section 134A.004 of the Texas Civil Practice and Remedies Code. Therefore, Defendant seeks exemplary damages from Plaintiff and all those acting in concert with him.

## VI.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that it recover damages upon final hearing and Plaintiff be awarded judgment against Defendant as follows:

1. Plaintiff have judgment against Defendant for actual, general, special, and statutory damages in an amount in excess of the minimum jurisdictional limits of this Court;

2. Plaintiff recover on its claims for misappropriation of trade secrets, theft of trade secrets, tortious interference with a contract and existing contractual relations, breach of fiduciary duty, and breach of contract.

3. Court costs;

4. Reasonable and necessary attorney fees;

5. Exemplary damages;

6. Prejudgment interest as allowed by law;

7. Post-judgment interest as allowed by law; and

8. Any other legal or equitable relief, whether general or specific, to which Plaintiff may be entitled.

Respectfully submitted,

**BARLOW GARSEK & SIMON, LLP**
920 Foch Street
Fort Worth, Texas 76107
817.731.4500
817.731.6200 – Facsimile


By: */s/ Christian Dennie*
    **Christian Dennie**
    State Bar No. 24045775
    cdennie@bgsfirm.com

*ATTORNEY FOR PLAINTIFF*

### CERTIFICATE OF SERVICE

I certify that on April 25, 2019, I electronically filed the foregoing *First Amended Complaint* with the Clerk of the Court for the United States District Court, Northern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record by electronic means.

    */s/ Christian Dennie*
    Christian Dennie